**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 SW Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249
 Of Attorneys for plaintiff

## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| **CHARLES SAMPSON, SR.**, | Case No. 6:21-cv-1262 |
| PLAINTIFF, | **COMPLAINT** |
| v. | Civil Rights Action (42 U.S.C. § 1983); Negligence |
| **OREGON DEPARTMENT OF CORRECTION**, an agency of the State of Oregon; **WILLAMETTE SURGERY CENTER, LLC; JERRY BECKER; REED PAULSON;** and **WILLIAM STRAUSS;** | **JURY TRIAL DEMANDED** |
| DEFENDANTS. | |

### INTRODUCTION

1. This is a civil rights and negligence action concerning the defendants' deliberate indifference to plaintiff's serious medical needs. While incarcerated at Oregon State Penitentiary (OSP), plaintiff was denied constitutionally adequate medical care for his severe spinal stenosis.

PAGE 1 – COMPLAINT

Defendants were deliberately indifferent to his condition, denied diagnostic testing that would have conclusively shown the condition he was suffering from, and misdiagnosed him with irritable bowel syndrome (IBS) and carpal tunnel syndrome. Defendants, rather than conducting a simple MRI, performed a surgery on plaintiff's hand to alleviate the nonexistent carpal tunnel syndrome and gave him a colonoscopy to diagnose IBS, which he did not have. Defendants ignored Sampson's complaints of pain and failed to properly treat his pain. Defendants delay in properly treating plaintiff lasted years and caused permanent injury to his spine. By the time the surgery was performed to correct the severe spinal stenosis, it was too late. Plaintiff went from using a cane, to a walker to and now is in a wheelchair because of defendants' conduct. Plaintiff will endure nerve pain, burning, numbness, and paralysis for the rest of his life.

## JURISDICTION

2.  This court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

3.  This Court has jurisdiction over Plaintiff's supplemental state law claims under 28 U.S.C. § 1367 since they are so related to the § 1983 claim that they form part of the same case or controversy.

## VENUE

4.  Venue is proper within the District of Oregon because all of the events giving rise to this claim occurred in this judicial district, and all defendants reside in this judicial district. 28 U.S.C. § 1391(b). Specifically, all of the acts and practices alleged herein occurred at OSP in Salem, Marion County, Oregon.

## PARTIES

5.  Plaintiff Charles Sampson, Sr., is a prisoner in the custody of the Oregon Department of Corrections (ODOC) at OSP.

PAGE 2 – COMPLAINT

6. Defendant ODOC is an agency of the State of Oregon.

7. Defendant Reed Paulson was at all times relevant a physician at ODOC medical services at OSP in Marion County, Oregon, and is sued in his individual capacity. At all relevant times, Paulson acted under color of law.

8. Defendant Willamette Surgery Center, LLC (WSC) is an Oregon limited liability company that operates a clinic in Salem, Oregon. Both Sampson's carpal tunnel surgery and colonoscopy were performed at WSC. WSC is responsible for ensuring that surgeries performed at its facility are warranted by objective, medical evidence and neither negligently performed or the product of negligent misdiagnosis.

9. Defendant Jerry Becker was at all times relevant a physician contracted or employed by ODOC medical services at OSP in Marion County, Oregon, and is sued in his individual capacity. At all relevant times, Becker acted under color of law.

10. Defendant William Strauss was at all times relevant a physician contracted or employed by ODOC medical services at OSP in Marion County, Oregon, and is sued in his individual capacity. At all relevant times, Strauss acted under color of law.

## FACTUAL ALLEGATIONS

11. In 2011, Sampson underwent a magnetic resonance imaging scan (MRI) on his neck and spine because he was experiencing back pain and numbness. The findings of this MRI lead to a Sampson undergoing an anterior cervical discectomy.

12. In spite of the surgery, Sampson continued to suffer from the same symptoms as he suffered in 2011, numbness and pain in his lower back and extremities. Sampson sent numerous inmate communication forms complaining of numbness in his hands, wrists and arms, as well as loss of strength in his arms.

13. Becker examined Sampson at OSP medical in August 2015. Becker wrongly

diagnosed Sampson with carpal tunnel syndrome and performed a bilateral carpal tunnel surgery on January 21, 2016, at WSC. At this point, Sampson was suffering from spinal stenosis of the L4-L5 vertebrae. At this point, the condition could have been successfully treated if it had been diagnosed and treated promptly. By the time ODOC medical learned that the actual cause of Sampson's hand, wrist and arm pain was the product of spinal stenosis, his spinal chord was flattened to less than 3 mm and had cut off the spinal fluid completely.

14.  After Becker performed the carpal tunnel surgery, Sampson began experiencing excruciating pain in arms, hands, shoulder, and left side of spine. Sampson reported this condition to Becker in February 2016. Sampson did not and does not have carpal tunnel syndrome. Needlessly performing the surgery on Sampson caused him pain and damage to his hands and arms.

15.  Meanwhile, Sampson continued to complain about pain and numbness in his hands and in his abdomen and lower back. In April 2016, Paulson diagnosed Sampson's abdominal pain as IBS. Paulson ordered a CT scan of the abdomen and pelvis which performed on April 11, 2016. The results were normal. Paulson then ordered a colonoscopy which was performed on August 5, 2016, at WSC. The results were normal and did not support a diagnosis of IBS. Rather than correctly conclude that Sampson's pain and numbness in his back, abdomen, hands, wrists, and arms was connected, Paulson continued to treat Sampson for IBS.

16.  Throughout 2016, 2017 and 2018, Sampson complained of pain, numbness and burning sensations in this back, abdomen, hands and arms. Sampson also began to experience pain in his groin and inner thigh at this time. Sampson began to experience paralysis in his legs forcing him to use a cane and later a walker. These complaints were ignored until May 2019 when Sampson received a new primary care provider, Dr. Andrew Glass. After examining Sampson and reviewing his medical history, Dr. Glass ordered an MRI. Dr. Glass recognized

that Sampson's symptoms, taken together with his earlier back surgery indicated that he was likely suffering from a narrowing of the spine and that it was necessary to perform an MRI to confirm or deny this diagnosis. The MRI was, naturally, initially refused by the Therapeutic Level of Care committee (TLC). Finally, on July 18, 2019, the TLC approved Sampson's MRI which he received on August 23, 2019.

17. On September 6, 2019, Dr. Glass informed Sampson that he suffered from severe spinal stenosis, which had flattened his spinal cord to less than 3mm width and completely cut of the supply of spinal fluid. Dr. Glass informed him that it was probable that this condition was causing his pain, numbness and burning as well as his abdominal and back pain. Sampson was seen by specialists at Oregon Health and Sciences University (OHSU) on January 15, 2020. The TLC approved Sampson for spinal surgery.

18. On November 24, 2019, Sampson received an MRI on his groin which revealed a muscle tear which was responsible for his groin and inner thigh pain. Sampson has still not received a corrective surgery for this condition which is ongoing.

19. In December 2019, Sampson's paralysis worsened, and he could not feel his left leg from his hip to his toes and his balance was off. Sampson started using a walker as a result.

20. On March 19, 2020, Sampson underwent surgery at OHSU. Following the surgery, Sampson learned that the surgery was not able to correct the effects of the years of suffering from severe spinal stenosis with no treatment. Sampson will permanently suffer from nerve pain, numbness, burning sensations, paralysis, and loss of ambulation.

21. On September 25, 2020, Sampson returning to his cell from a medical appointment. Officers on Sampson's unit, including Sgt. Branch, were aware that sewage water had seeped out onto the floor near Sampson's cell and did not inform Sampson of this fact. When Sampson approached his cell, he slipped on the water present and fell on his back, injuring his

neck. There were no signs indicating standing water and Sgt. Branch did not warn Sampson of the danger of slipping and falling. Sgt. Branch knew that Sampson was severely limited in his ability to walk and used a cane or a walker. After he fell, Sampson lay in the sewage water, unable to move, for 15 minutes before someone helped him. He was taken to the hospital. After Sampson fell, Sgt. Branch instructed staff to put up warning signs and joked to another inmate, "Oops, I guess I should have mentioned there was shit water on the floor."

22. Following this fall, Sampson has suffered continued worsening in his paralysis in his legs. Sampson is confined to a wheelchair in order to get around. Sampson's condition is permanent.

## COUNT I

### (Negligence – against all Defendants)

23. Sampson re-alleges all previous relevant paragraphs as if fully stated herein.

24. Defendants' treatment of Sampson fell below the applicable standard of care and was negligent as follows:

    (a)    In failing to diagnose severe spinal stenosis;

    (b)    Is misdiagnosing, without appropriate testing or evidence, carpal tunnel syndrome and IBS, neither of which Sampson had;

    (c)    In performing two unnecessary surgical procedures (colonoscopy and carpal tunnel surgery) on Sampson;

    (d)    In failing to adequately treat or acknowledge Sampson's pain;

    (e)    In failing to conduct appropriate testing of Sampson's back;

    (f)    In failing to treat Sampson's spinal stenosis;

    (g)    In failing to conduct appropriate testing of Sampson's groin and leg pain;

    (h)    In failing to treat Sampson's muscle tear in his groin;

    (i)  In failing to warn Sampson of the presence of water on the floor;

    (j)  In failing to place warning signs to alert Sampson to the presence of water on the concrete floor near his cell;

    (k)  In failing to promptly clean the floors and remove the standing water; and

    (l)  In requiring Sampson to walk to his cell knowing that the floor was wet and a falling hazard.

  25.  WSC's treatment of Sampson fell below the applicable standard of care and was negligent as regards (a)-(c), (e) and (f), above. Becker, Strauss, and Paulson's treatment of Sampson fell below the applicable standard of care and was negligent as regards (a)-(h), above. ODOC's treatment of Sampson fell below the applicable standard of care and was negligent as regards (a)-(l), above.

  26.  Defendants knew or should have known that Sampson's back, abdomen, hand and arm condition required testing to determine its true cause. Defendants knew that an MRI was necessary to rule out spinal stenosis or other spinal injury that were causing his symptoms. In failing to do such testing and failing to properly diagnose his condition, Sampson suffered physical harm and pain. Defendants knew or should have known that failing to promptly provide adequate care to Sampson would result in his suffering physical harm, including severe physical and mental pain and suffering.

  27.  Defendants knew or should have known that Sampson was not suffering from IBS or carpal tunnel syndrome. In failing to do proper testing and failing to properly diagnose his condition, Sampson suffered physical harm and pain as a result of undergoing unnecessary procedures. In the case of the carpal tunnel surgery, Sampson suffered severe pain and loss of function to his hand, wrist and arms as a result of undergoing an unnecessary surgery. Defendants knew or should have known that failing to promptly provide adequate care to

Sampson would result in his suffering physical harm, including severe physical and mental pain and suffering.

28. ODOC and Paulson knew or should have known that Sampson's thigh condition required testing to determine its true cause. ODOC and Paulson knew that an MRI was necessary to rule out muscle tear. In failing to do such testing and failing to properly diagnose his condition, Sampson suffered physical harm and pain. ODOC and Paulson knew or should have known that failing to promptly provide adequate care to Sampson would result in his suffering physical harm, including severe physical and mental pain and suffering.

29. ODOC knew or should have known that the floor near Sampson's cell was slippery from standing water. Defendants ODOC knew that the floor was wet and took no steps to warn Sampson of the danger. Defendants knew or should have known that failing to warn Sampson of the hazard would result in his suffering physical harm, including severe physical and mental pain and suffering.

30. Defendants failed to use reasonable care in providing medical care to Sampson as alleged above. ODOC failed to use reasonable care in failing to warn Sampson of the hazard of slipping and falling or to remediate said hazard. Defendants' conduct was negligent.

31. Defendants owe Sampson a higher standard of care because of the nature of incarceration. As a ward of the State, Defendants manage all aspects of Sampson's health care, and decide when a request for a medical appointment should be granted. Had Sampson been a free person, he would have sought the appropriate treatment immediately and had some form of treatment rendered. However, as an incarcerated person, when Sampson sought treatment while in ODOC's facility, his pleas for treatment were unmet. ODOC voluntarily took the custody of Sampson under circumstances such as to deprive Sampson of normal opportunities for protection and created a non-delegable duty to ensure that Sampson was able to access adequate medical

care while incarcerated. Defendants did not meet its obligation to provide for "healthcare, including medical, dental, mental health care and pharmacy services, that compl[ies] with appropriate professional standards." OAR 291-124-0016(1)(c).

33. 32. Defendants' conduct was unreasonable in light of the risk of harm to Sampson. Defendants controlled all aspects of Sampson's medical care. Sampson's spinal stenosis could have been easily diagnosed by providing an MRI. If it had been treated earlier, the probability of a successful surgery would have been greatly increased. Instead, Defendants unreasonably disregarded Sampson's requests for medical assistance concerning his back, arms, hands, abdomen, groin, and legs and ignored a very dangerous medical issue. ODOC knew of the risk of slipping and falling and did nothing to warn Sampson of the risks or to remediate them.

33. As a direct and proximate result of Defendants' negligence, Sampson suffered physical harm and severe physical and mental pain and suffering. Because of Defendants failure to treat his spinal stenosis sooner, Sampson suffered permanent damage to his spine, including permanent pain, paralysis and loss of ambulation. He will require future treatment as a result of Defendants' conduct.

34. Sampson provided ODOC with a timely Tort Claims Notice.

35. Defendants' conduct was a substantial factor in causing harm to Sampson.

36. As a result of Defendants' conduct, Sampson suffered economic and non-economic damages in an amount to be proved at trial.

37. Sampson is entitled to a prevailing party fee, his costs and his disbursements.

38. Sampson should be fully and fairly compensated for these economic and non-economic damages in a sum that is just as determined by a jury; however, the amount of economic damages are estimated to be $750,000 and the noneconomic damages are estimated to be $5,000,000.

## COUNT II

### (42 U.S.C. § 1983 – against Becker, Paulson, and Strauss)

39. Sampson re-alleges all prior relevant paragraphs as if fully set forth herein.

40. Becker, Paulson, and Strauss were deliberately indifferent to Sampson's serious medical needs as follows:

   (a)   In failing to diagnose severe spinal stenosis;

   (b)   Is misdiagnosing, without appropriate testing or evidence, carpal tunnel syndrome and IBS, neither of which Sampson had;

   (c)   In performing two unnecessary surgical procedures (colonoscopy and carpal tunnel surgery) on Sampson;

   (d)   In failing to adequately treat or acknowledge Sampson's pain;

   (e)   In failing to conduct appropriate testing of Sampson's back;

   (f)   In failing to treat Sampson's spinal stenosis;

41. As a result of their deliberate indifference, Defendants Becker, Paulson, and Strauss violated Sampson's right to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution. In failing to do such testing and failing to properly diagnose his melanoma, Sampson suffered physical harm, including injury to his face. Defendants Becker, Paulson, and Strauss knew or should have known that failing to promptly provide adequate care to Sampson would result in his suffering physical harm, including deformation of his face, and severe physical and mental pain and suffering.

42. As a result of the Becker, Paulson, and Strauss's violations of Sampson's Constitutional rights, Sampson suffered physical harm and severe physical and mental pain and suffering. Accordingly, Sampson is entitled to economic and non-economic damages against Becker, Paulson, and Strauss in an amount to be determined at trial for the violations of 42 U.S.C

§ 1983 and for Sampson's attorney fees and costs pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, Sampson prays for relief against all defendants, severally and individually, as follows:

a. Economic damages in an amount not presently known or ascertainable but to be proven at trial; here estimated to be $500,000;

b. Non-economic damages in an amount not presently known or ascertainable but to be proven at trial; here estimated to be $5,000,000;

c. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

d. For such other and further relief as may appear just and appropriate.

**Plaintiff demands a trial by Jury.**

Dated: August 24, 2021

**Law Offices of Daniel Snyder**

*/s/ John Burgess*
John Burgess, OSB No. 106498
johnburgess@lawofficeofdanielsnyder.com
Carl Post, OSB No. 061058
carlpost@lawofficeofdanielsnyder.com
Telephone: (503) 241-3617
Facsimile: (503) 241-2249
Of Attorneys for Plaintiff