IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CHARLES SAMPSON, SR.**, | Case No. 6:21-cv-01262-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **OREGON DEPARTMENT OF CORRECTION**, an agency of the State of Oregon; **JERRY BECKER**; **REED PAULSON**; **WILLIAM STRAUSS**, | |
| Defendants. | |

**IMMERGUT, District Judge.**

Plaintiff Charles Sampson ("Plaintiff"), a self-represented litigant in custody at the Oregon State Penitentiary, brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging that the Oregon Department of Corrections ("ODOC"), Jerry Becker, Reed Paulson and William Strauss (together, "Defendants") were deliberately indifferent to Plaintiff's serious medical needs and were negligent in treating him for spinal stenosis. (Am. Compl. (ECF No. 24) ¶ 42.) Before

PAGE 1 – OPINION AND ORDER

the Court is Defendants' Motion to Dismiss. (Defs.' Mot. Dismiss (ECF No. 27).) In support of the motion, Defendants argue that Plaintiff has not established that Drs. Becker, Paulson and Strauss deprived Plaintiff of medical care or that they were deliberately indifferent to Plaintiff's medical needs; that Plaintiff's negligence claim is barred by the Oregon Tort Claims Act ("OTCA") and the Eleventh Amendment; and that all claims are time-barred by the applicable statute of limitations. For the reasons that follow, the Court GRANTS Defendants' Motion.

## BACKGROUND

While in custody in 2011, Plaintiff started experiencing back pain and numbness and underwent a magnetic resonance imaging scan ("MRI") on his neck and spine. (Am. Compl. (ECF No. 24), ¶ 10.) Plaintiff alleges that the findings led to him having "an anterior cervical discectomy." (*Id*.) After this surgery, Plaintiff suffered from continued pain and numbness in his lower back, as well as numbness in his hands, wrists and arms, and loss of strength in his arms. (*Id*. ¶ 11.)

In August 2015, Dr. Becker examined Plaintiff and subsequently performed a "bilateral carpal tunnel surgery" on January 21, 2016. (*Id*. ¶ 12.) After this surgery, Plaintiff began experiencing "excruciating pain in arms, hands, shoulder, and left side of spine," and reported this to Dr. Becker in February 2016. (*Id*. ¶ 13.) Plaintiff continued to complain about pain and numbness in his hands, abdomen, and lower back. (*Id*. ¶ 14.)

In April 2016, Plaintiff suffered from abdominal pain which Dr. Paulson diagnosed as irritable bowel syndrome ("IBS") and ordered a CT scan of Plaintiff's abdomen and pelvis. (*Id*.) The results were normal. (*Id*.) Plaintiff continued to complain of pain, numbness and burning sensations in his back, abdomen, hands, and arms throughout 2016, 2017, and 2018. (*Id*. ¶ 15.) Plaintiff also began to experience pain in his groin and inner thigh, and paralysis in his legs. (*Id*.)

In May 2019, Plaintiff saw Dr. Glass, who ordered an MRI. (*Id*. ¶ 16.) The MRI was performed on August 23, 2019. (*Id.*) On September 6, 2019, Dr. Glass diagnosed Plaintiff with "severe spinal stenosis, which had flattened his spinal cord to less than 3mm width and completely cut off the supply of spinal fluid." (*Id*. ¶ 17.) Another MRI was performed on November 24, 2019, revealing a muscle tear allegedly causing pain in Plaintiff's groin and inner thigh. (*Id*. ¶ 19.)

In December 2019, Plaintiff "could not feel his left leg from his hip to his toes and his balance was off," and he began using a walker. (*Id*. ¶ 20.) Plaintiff saw specialists at Oregon Health and Sciences University on January 15, 2020, and underwent spinal surgery on March 19, 2020. (*Id*. ¶¶ 17, 21.) Plaintiff, who now uses a wheelchair, alleges he "will permanently suffer from nerve pain, numbness, burning sensations, paralysis and loss of ambulation." (*Id*. ¶¶ 21, 23.)

Plaintiff alleges Defendants were negligent and deliberately indifferent to his serious medical condition. He alleges that Defendants failed to diagnose him with spinal stenosis as early as 2015, wrongfully denied him necessary diagnostic testing, misdiagnosed him, and performed two unnecessary surgeries or procedures on him. Defendants now move to dismiss Plaintiff's Amended Complaint arguing that Plaintiff's deliberate indifference claim fails as a matter of law, Plaintiff's negligence claim is barred by the OTCA and Eleventh Amendment, and both claims are barred by the statute of limitations.

## LEGAL STANDARD

To state a claim upon which relief may be granted, a plaintiff must allege facts that give rise to a plausible inference that the defendants violated the plaintiff's constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A Rule 12(b)(6) motion tests whether there is a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). To

survive a Rule 12(b)(6) motion, "the complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. 570). In evaluating a motion to dismiss, the court must accept all well-pleaded material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

## DISCUSSION

### I. INADEQUATE MEDICAL CARE CLAIM

Defendants move to dismiss Plaintiff's inadequate medical care claim arguing Plaintiff has failed to allege facts showing that Defendants deprived Plaintiff of medical care or were deliberately indifferent to Plaintiff's medical condition, and that Plaintiff's claims otherwise are barred by the statute of limitations.

#### A. Statute of Limitations

In Oregon, the applicable statute of limitations for a Section 1983 action is two years from the date that the cause of action accrues. *Sain v. City of Bend*, 309 F.3d 1134, 1139 (9th Cir. 2002). "[A] claim accrues [and the statute of limitations begins to run] when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 926 (9th Cir. 2004). A Section 1983 action commences in federal district court when the complaint is filed. *Sain*, 309 F.3d at 1139; *see also* FED. R. CIV. P. 3 (instructing that a "civil action is commenced by filing a complaint with the court").

Plaintiff filed the complaint on August 24, 2021. (Compl. (ECF No. 1).) Applying the two-year statute of limitations, any acts or omissions by Drs. Becker, Paulson, or Strauss that occurred prior to August 24, 2019 are time-barred. Plaintiff's factual allegations as to Drs. Becker and Paulson, however, exclusively concern conduct that occurred prior to August 24, 2019, and

Plaintiff does not argue that tolling applies to extend the limitations period. Indeed, Plaintiff appears to concede that his allegations against the individual defendants are time-barred. (*See* Resp. to Mot. at 14 (stating that "none of the conduct outside the two-year [limitations] period is the subject of this lawsuit" but is intended only to "provide[] background to the ultimate facts that underlie [Plaintiff's] claims").) Because Plaintiff failed to allege any conduct by Defendants Becker, Paulson, or Strauss within the statute of limitations period, and offers no plausible or persuasive argument for tolling the statute of limitations or that his claims otherwise are timely brought, Plaintiff's Amended Complaint appears to be untimely on its face.

### B.     Deliberate Indifference

Even if Plaintiff's claims are timely, he fails to allege facts that Defendants showed "deliberate indifference to [his] serious medical needs" in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 104 (1976). "A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is objectively, sufficiently serious and (2) the prison official possessed a sufficiently culpable state of mind." *Wiley v. Oregon*, No. 2:17-CV-00664-JO, 2019 WL 4261112, at *1 (D. Or. Sept. 9, 2019) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The prison official must know of and disregard an excessive risk to an inmate's health. *Id.* (citing *Farmer*, 511 U.S. at 837). Deliberate indifference may be demonstrated by prison officials' denying, delaying, or intentionally interfering with medical treatment, or by the manner in which they provide medical treatment. *Estelle*, 429 U.S. at 105. "A medical need is serious when the failure to treat it could result in significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs because they "failed to order an MRI when it was medically indicated for up to 9 years,

PAGE 5 – OPINION AND ORDER

misdiagnosed two disparate and unlikely conditions rather than order an MRI, performed two unnecessary and harmful surgeries on him, and failed to treat his pain for years." (Pl.'s Resp. in Opp'n at 14.) Plaintiff contends that Defendants were "not competent to diagnose his condition and did not have the ability to administer an MRI . . . [and] were obliged to refer [him] to a provider that could." (*Id.*) However, Plaintiff cannot state an Eighth Amendment claim against Defendants generally. He must instead demonstrate that each defendant, through his own individual actions or inaction, was deliberately indifferent to Plaintiff's serious medical needs. *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . [Section 1983] suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the constitution").

With respect to Drs. Becker and Paulson, Plaintiff alleges that Dr. Becker examined him in August 2015 and "wrongly diagnosed [him] with carpal tunnel syndrome and performed a bilateral carpal tunnel surgery on January 21, 2016." (Am. Compl. ¶ 13.) In February 2016, he reported to Dr. Becker that after the surgery he "began experiencing excruciating pain in [his] arms, hands, shoulder, and left side of [his] spine." (*Id.* ¶ 14.) Plaintiff alleges no facts as to how Dr. Becker responded to this report or what actions he did or did not take in its wake. Instead, Plaintiff simply alleges that "he continued to complain"—to no one in particular—about pain and numbness in his hands, abdomen, and lower back. (*Id.* ¶ 15.) Then, in April 2016, Dr. Paulson "diagnosed [his] abdominal pain as IBS," ordered a CT scan (which was performed on April 11, 2016) and ordered a colonoscopy (which was performed on August 5, 2016). (*Id.*) Plaintiff alleges that after these test results came back normal, Dr. Paulson failed to "correctly conclude that [Plaintiff's] pain and numbness in his back, abdomen, hands, wrists, and arms was connected," and continued treating his abdominal symptoms as IBS. (*Id.*) Plaintiff otherwise alleges that he

complained of pain, numbness, and burning sensations in his back, abdomen, hands, and arms "[t]hroughout 2016, 2017, and 2018," (*Id.* ¶ 16), but fails to allege the specific dates on which he made complaints and to whom, the specific actions or inactions taken as a result, and the outcome.

In light of the seemingly incomplete allegations above, Plaintiff fails to allege sufficient facts to establish that Drs. Becker and Paulson were deliberately indifferent to Plaintiff's serious medical condition or acted with a sufficiently culpable state of mind in allegedly denying Plaintiff adequate medical care. Rather, Plaintiff's allegations at most might suggest that Drs. Becker and Paulson were negligent in diagnosing and treating Plaintiff's condition, which does not amount to a violation of the Eighth Amendment. *See Estelle*, 429 U.S. at 106 (explaining that "a complaint that physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"); *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (noting that "[w]hile poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice"). Rather than "ignoring" Plaintiff's complaints as he claims, Plaintiff alleges that Drs. Becker and Paulson both examined him, utilized various diagnostic tools to reach a diagnosis, and implemented restorative measures to address his symptoms. Although Plaintiff asserts that these measures were wrongful, he stops short of alleging that such measures were "medically unacceptable under the circumstances" and that Drs. Becker and Paulson chose them "in conscious disregard of an excessive risk to [his] health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Because there are no facts in the amended complaint to suggest that Drs. Becker and Paulson intentionally denied or delayed Plaintiff's medical care or purposefully ignored his pain and medical needs, Plaintiff fails to state a claim. *See Balderrama v. Cal. Dep't of Corr. and Rehab.*, 2020 WL 4260965, at *3 (C.D. Cal. July 24, 2020) (explaining that "the

indifference to the inmate's medical needs must be purposeful and substantial; negligence, inadvertence, or differences in medical judgment or opinion do not rise to the level of a constitutional violation").

With respect to Dr. Strauss, Plaintiff fails to allege sufficient facts to establish that Dr. Strauss personally was involved in any alleged constitutional violation. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (explaining that "[l]iability under section 1983 arises only upon a showing of personal participation by the defendant" in the alleged constitutional deprivation). The only specific allegation asserted against Dr. Strauss in the Amended Complaint is that he was a contracted physician and acted under color of law. (Am. Compl. ¶ 10.) Although it is unclear whether Dr. Strauss was contracted in a supervisory capacity or simply filled in as a frontline physician, the Court notes that it is well established that Section 1983 does not impose liability upon persons for the acts of their subordinates under a *respondeat superior* theory of liability. *Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 691-94 (1978). Rather, "[a] defendant may be held liable as a supervisor under Section 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). Plaintiff's single allegation against Dr. Strauss is wholly insufficient to support a claim of personal or supervisory liability in this case.

For the reasons stated, Plaintiff fails to state an Eighth Amendment claim against Drs. Becker, Pearson, or Strauss. Accordingly, the Court dismisses Plaintiff's inadequate medical care claim.

///

PAGE 8 – OPINION AND ORDER

## II. NEGLIGENCE CLAIM

Defendants move to dismiss Plaintiff's state law negligence claim, arguing that it is barred by the Oregon Tort Claims Act and the Eleventh Amendment, and is untimely. (Defs.' Mot. Dismiss at 8-9.). The Court agrees. *See* OR. REV. STAT. § 30.265(1) (the "sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties . . . shall be an action against the public body only."); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) (under the Eleventh Amendment, federal courts may not entertain lawsuits brought by citizens against a state without the state's express consent). Plaintiff concedes that Defendants are entitled to sovereign immunity under the Eleventh Amendment and states that he will pursue this claim in state court. (Pl.'s Resp. in Opp'n at 15.) Accordingly, the Court dismisses Plaintiff's negligence claim, without prejudice, so that he may seek relief in state court, if such relief is available.

## CONCLUSION

For the reasons stated, the Court GRANTS Defendants' Motion to Dismiss (ECF No. 27) and DISMISSES the Amended Complaint. However, the Court GRANTS Plaintiff's request for leave to file second amended complaint. Plaintiff must file an amended pleading, curing the deficiencies noted above, within fourteen days of the date if this order. In the alternative, Plaintiff Plaintiff may move to voluntarily dismiss this case so that he may pursue his claims in state court.

**IT IS SO ORDERED.**

DATED this 19th day of July, 2022.

*Karin J. Immergut*
Karin J. Immergut
United States District Judge