**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**CHARLES SAMPSON, SR.,**

Plaintiff,

v.

**OREGON DEPARTMENT OF CORRECTION,** an agency of the State of Oregon; **JERRY BECKER; REED PAULSON; WILLIAM STRAUSS**,

Defendants.

Case No. 6:21-cv-01262-IM

**OPINION AND ORDER**

John D. Burgess and Carl Lee Post, Law Offices of Daniel Snyder, 1000 SW Broadway, Suite 2400, Portland, OR 97205. Attorneys for Plaintiff.

Nathaniel Aggrey, Oregon Department of Justice, Civil Litigation Unit, 1162 Court Street NE, Salem, OR 97301. Attorney for Defendants.

**IMMERGUT, District Judge.**

Plaintiff Charles Sampson ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 alleging that the Oregon Department of Corrections ("ODOC"), Jerry Becker, Reed Paulson, and William Strauss (together, "Defendants") were deliberately indifferent to Plaintiff's serious

medical needs. ECF 33 at ¶ 1. This Court previously granted Defendants' Motion to Dismiss Plaintiff's First Amended Complaint but gave Plaintiff leave to file a second amended complaint. ECF 32 at 9.

Before this Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. ECF 34. Defendants argue that Plaintiff's claims are time barred and that Plaintiff has failed to state a claim for inadequate medical treatment. *Id.* at 2. For the following reasons, this Court GRANTS Defendants' Motion.

**BACKGROUND**

The following allegations are taken from Plaintiff's Second Amended Complaint. ECF 33. In September of 2011, while in the custody of ODOC, Plaintiff began experiencing back pain and numbness. *Id.* at ¶ 9. Plaintiff underwent a magnetic resonance imaging scan ("MRI"), which led to him having "an anterior cervical discectomy." *Id.* After this surgery, Plaintiff suffered from continued pain and numbness in his lower back, as well as numbness in his hands, wrists, and arms and loss of strength in his arms. *Id*. at ¶ 10.

Defendant Jerry Becker, an ODOC physician, examined Plaintiff in August of 2015. *Id.* at ¶¶ 6, 11. Following this examination, Plaintiff alleges that Dr. Becker misdiagnosed him with carpal tunnel syndrome. *Id.* at ¶ 11. Plaintiff underwent bilateral carpal tunnel surgery in January of 2016. *Id.* Plaintiff alleges that Dr. Becker failed to correctly diagnose Plaintiff's spinal stenosis, which could have been successfully treated had it been properly diagnosed at this time. *Id.*

Following the bilateral carpal tunnel surgery, Plaintiff alleges that he "began experiencing excruciating pain in [his] arms, hands, shoulder, and left side of [his] spine," which he reported to Dr. Becker in February of 2016. *Id.* at ¶ 12. Plaintiff also continued to complain about pain and numbness in his hands, abdomen, and lower back. *Id.* at ¶ 13. Defendant Reed

Paulson, an ODOC physician, ordered a CT scan of Plaintiff's abdomen, which returned normal results. *Id.* at ¶¶ 6, 13. Dr. Paulson also ordered a colonoscopy, which Defendant William Strauss, an ODOC physician, performed in August of 2016. *Id.* at ¶¶ 8, 13. Following these tests, Dr. Paulson treated Plaintiff for irritable bowel syndrome ("IBS"). *Id.* Plaintiff continued with this treatment "despite knowing that it was unnecessary, unwarranted and would not provide relief for his symptoms." *Id.*

Throughout 2016, 2017, and 2018, Plaintiff continued to complain of "pain, numbness and burning sensations in this back, abdomen, hands and arms." *Id.* at ¶ 14. Plaintiff also began experiencing pain in his groin and thigh, as well as paralysis in his legs that forced him to use a cane and a walker. *Id.* Plaintiff alleges that his complaints were continuously ignored by Defendants. *Id.*

In May of 2019, Plaintiff received a new primary care provider, Dr. Andrew Glass, who ordered an MRI. *Id.* at ¶ 15. On September 6, 2019, following the MRI, Dr. Glass informed Plaintiff that he suffered from "severe spinal stenosis," which "had flattened his spinal cord to less than 3mm width and completely cut of the supply of spinal fluid." *Id.* at ¶ 16. Plaintiff alleges that he did not know and could not have known about the alleged medical malpractice of Drs. Becker, Paulson, and Strauss until September 6, 2019. *Id.* at ¶ 17. Plaintiff underwent surgery in March 2020 to correct his spinal stenosis. *Id.* at ¶ 21. Plaintiff alleges that this surgery "was not able to correct the effects of the years of suffering from severe spinal stenosis with no treatment" and that he "will permanently suffer from nerve pain, numbness, burning sensations, paralysis, and loss of ambulation." *Id.*

## LEGAL STANDARD

A motion brought under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A motion to dismiss for failure to state a claim may be

granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.,* 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

## DISCUSSION

### A. Plaintiff's Section 1983 Claim of Inadequate Medical Care

Plaintiff's Second Amended Complaint raises one claim of inadequate medical care in violation of Plaintiff's Eighth Amendment rights. ECF 33 at ¶¶ 25–28. Defendants argue Plaintiff's claim is both barred by the statute of limitations and fails to sufficiently allege that Defendants were deliberately indifferent to Plaintiff's medical needs. This Court considers both arguments in turn.

#### 1. Statute of Limitations

"A statute of limitation defense may be raised by a motion to dismiss if the running of the limitation period is apparent on the face of the complaint." *Vaughan v. Grijalva*, 927 F.2d 476, 479 (9th Cir. 1991). Plaintiff brings his claim of inadequate medical care under 42 U.S.C. § 1983 ("Section 1983"). Section 1983 claims borrow the forum state's statute of limitations for personal injury claims. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). Accordingly, the statute of limitations for Section 1983 claims in Oregon is two years. O.R.S. 12.110(4). A Section 1983 action commences in federal district court when the complaint is filed. *Sain v. City of Bend*, 309 F.3d 1134, 1138 (9th Cir. 2002); *see also* Fed. R. Civ. P. 3 (instructing that a "civil action is commenced by filing a complaint with the court"). Plaintiff filed the instant action on August 21, 2021. ECF 1. Defendants argue that any acts or omissions that occurred before August 21, 2019 are time-barred and must be dismissed. ECF 34 at 4.

Plaintiff counters by raising the "discovery rule," ECF 36 at 1, under which the statute of limitations for a Section 1983 claim begins to run when a plaintiff discovers or reasonably should have discovered the underlying constitutional injury. *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1278 (9th Cir. 2017). Plaintiff alleges that he "learned of [Defendants'] misdiagnosis and failure to provide constitutionally adequate treatment on September 6, 2019," ECF 36 at 11,

and further alleges that he "could not have known about the medical malpractice that had occurred at the hands of [Defendants] Becker, Paulson and Strauss" until that date, *id.* at ¶ 17. Plaintiff thus argues that the statute of limitations for his claim began to run on September 6, 2019, and that his claim was timely filed on August 21, 2021. *Id.* at 12.

Though Plaintiff alleges that he could not have known about the alleged medical malpractice until September 6, 2019, the Second Amended Complaint also contains numerous factual allegations that Plaintiff regularly complained about continued pain following medical treatment. In 2011, for instance, following his first surgery for an anterior cervical discectomy, Plaintiff alleges that he "sent numerous inmate communication forms complaining of numbness and pain in his hands, wrists and arms, as well as loss of strength in his arms." ECF 33 at ¶ 10. Plaintiff likewise alleges that he "continued to complain of pain, numbness and burning sensations in this back, abdomen, hands and arms" throughout 2016, 2017, and 2018, *id.* at ¶ 14, despite receiving CT scans, a colonoscopy, a surgery for carpal tunnel, and numerous medical follow-ups. Plaintiff also alleges that in 2016—after receiving treatment from Defendants Becker, Paulson, and Strauss—he "continued with IBS treatment despite knowing that it was unnecessary, unwarranted and would not provide relief for his symptoms." *Id.* at ¶ 13. These allegations suggest that Plaintiff was on notice in 2016 that, despite receiving continued treatment, the care he was receiving was inadequate to treat his symptoms.

Plaintiff argues that although he knew that he was in pain despite medical treatment, "he could not have been aware of the failure to timely treat or diagnose his condition without first having his condition diagnosed." ECF 36 at 12. Plaintiff further argues that he could not have his condition properly diagnosed because, as an individual in the custody of ODOC, he was unable to seek a second medical opinion and instead was forced to rely on Defendants' representations.

*Id.* Based on Plaintiff's own factual allegations, however, this Court finds that Plaintiff was on notice well before September 2019 that the treatment he was receiving was not addressing the symptoms of which he complained, even if he did not know the full extent of his condition. *See Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) ("A cause of action accrues even if 'the full extent of the injury is not then known.'") (internal citation omitted). As such, based on the "discovery rule," Plaintiff's claim began accruing, at the latest, in 2016—more than two years before Plaintiff filed the instant action. Plaintiff's constitutional claims against Defendants Becker, Paulson, and Strauss are therefore time barred and must be dismissed.

**2. Violation of Plaintiff's Eighth Amendment Rights Under Section 1983**

Even if Plaintiff's claims were not time barred, this Court finds that Plaintiff has failed to state a claim for deliberate indifference in violation of his Eighth Amendment rights. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference only when two requirements are met. First, the alleged constitutional deprivation must be "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted). "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* Second, the prison official must have a "sufficiently culpable state of mind." *Id.* Liability for deliberate indifference under the Eighth Amendment requires "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see also Estelle v.* Gamble, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth

Amendment.”). Instead, the deliberate indifference standard requires that a prison official “knows of and disregards an excessive risk to inmate health or safety.” *Farmer*, 511 U.S. at 837.

Deliberate indifference may be demonstrated by prison officials’ denying, delaying, or intentionally interfering with medical treatment or by the manner in which they provide medical treatment. *Estelle*, 429 U.S. at 104–05. To prevail on a claim involving choices between alternative courses of treatment, a claimant must have facts showing that the chosen course of treatment was “medically unacceptable under the circumstances” and was chosen “in conscious disregard of an excessive risk to [the prisoner’s] health.” *Toguchi*, 391 F.3d at 1058. “[W]here a defendant has based his actions on a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference, as a matter of law.” *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Moreover, in order for Defendants Becker, Paulson, and Strauss to be individually liable under Section 1983, each individual defendant must be personally involved in the constitutional deprivation. “A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under [Section] 1983 must be based on the personal involvement of the defendant.” *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see also King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987) (“State officials are not subject to suit under section 1983 unless they play an affirmative part in the alleged deprivation of constitutional rights.”) (internal citation omitted).

Plaintiff alleges that Defendant Becker examined him in August of 2015 and “wrongly diagnosed [him] with carpal tunnel syndrome and performed a bilateral carpal tunnel surgery on January 21, 2016.” ECF 33 at ¶ 11. Plaintiff also alleges that “Becker was aware of [his] serious

medical condition and was deliberately indifferent to those needs by failing to provide the diagnostic or pain care necessary to treat his condition" because "[a] reasonable physician would know . . . that he could not diagnose the cause of [his] numbness and pain in his lower back and extremities without performing an MRI." *Id.* Plaintiff also alleges that "Becker deliberately disregarded [his] symptoms and refused to provide appropriate diagnostic or pain treatment, which led to a pathological worsening of his condition." *Id.*

Plaintiff alleges that Defendant Paulson "diagnosed [Plaintiff's] abdominal pain as IBS" and that Paulson wrongly ordered a CT scan of Plaintiff's abdomen and pelvis as well as a colonoscopy. *Id.* at ¶ 13. Plaintiff alleges that Paulson "should have known . . . that he could not diagnose [Plaintiff's] symptoms . . . without performing an MRI." *Id.* Plaintiff further alleges that Paulson was "deliberately indifferent" to his medical needs. *Id.*

Plaintiff alleges that Defendant Strauss performed the colonoscopy ordered by Paulson in August of 2016. *Id.* Plaintiff alleges that Strauss was also "deliberately indifferent" to his medical needs. *Id.*

This Court finds that the facts alleged in Plaintiff's Second Amended Complaint are insufficient to show that Defendants acted with a subjectively reckless state of mind. *See Farmer*, 511 U.S. at 839–40. From 2015 to 2016, Plaintiff alleges that he received treatment from Defendants including diagnostic visits, CT scans, physician consults, colonoscopy, and surgery. ECF 33 at ¶¶ 11, 13. Despite these treatments, Plaintiff alleges that he "continued to complain of pain, numbness and burning sensations in [his] back, abdomen, hands and arms" throughout 2016, 2017, and 2018, and that "[t]hese complaints were continuously ignored by defendants." *Id.* at ¶ 14. But Plaintiff alleges no facts to show how Defendants ignored his complaints, and this conclusory statement, without more, is "not entitled to the presumption of

truth." *Iqbal*, 556 U.S. at 679. In short, Plaintiff does not allege facts sufficient to support the inference that Defendants "den[ied] or delay[ed] [Plaintiff's] access to medical care, or intentionally interfere[d] with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05.

Likewise, this Court does not find that Defendants acted with deliberate indifference by pursuing the courses of treatment that they ultimately chose. Plaintiff argues that these treatments were inadequate, and that Defendants knew or should have known that other types of treatment offered a better chance at properly diagnosing his symptoms. *Id.* at ¶¶ 11, 13. But "[a] difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc). Plaintiff's Second Amended Complaint merely alleges that physicians such as Defendants "should have known" that the treatments they ordered were insufficient to diagnose Plaintiff's condition. ECF 33 at ¶¶ 9, 11, 13. These claims, without more, constitute "conclusory statements" that this Court need not credit on a motion to dismiss. *Iqbal*, 556 U.S. at 678. Based on the allegations in Plaintiff's Second Amended Complaint, this Court cannot conclude that the treatment that Plaintiff received was "medically unacceptable under the circumstances" and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Toguchi*, 391 F.3d at 1058.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, ECF 34, is GRANTED. As Plaintiff has twice been granted leave to amend his Complaint, and as this Court finds that Plaintiff's claim is time barred, Plaintiff's Second Amended Complaint is dismissed with prejudice.

**IT IS SO ORDERED.**

DATED this 19th day of December, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge